# Supreme Court of Texas

No. 21-0173

Builder Recovery Services, LLC,

*Petitioner*,

v.

The Town of Westlake, Texas,

*Respondent*

On Petition for Review from the
Court of Appeals for the Second District of Texas

**Argued March 23, 2022**

JUSTICE BLACKLOCK delivered the opinion of the Court.

Builder Recovery Services, LLC (BRS) hauls trash away from construction sites. The Town of Westlake is a general-law municipality in which BRS operates. BRS disputes the Town's authority to impose a percentage-of-revenue license fee on companies like BRS. As explained below, we agree with BRS that the fee exceeds the Town's authority. The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals.

## I.

BRS collects and removes solid waste from construction sites. It provides dumpsters for use during construction, and it hauls loaded dumpsters to landfills. BRS is paid by private customers such as construction contractors engaged in residential new construction or remodeling.

BRS wants to operate in the Town of Westlake, a general-law municipality of around 2,000 residents near Fort Worth. The Town has long had a "franchise agreement" with Republic Services, a private waste management company that performs regular residential and commercial trash collection for the Town's residents. Republic pays the Town an annual fee of 12% of its gross revenue generated in the Town. Republic also performs construction-site waste hauling, the same service provided by BRS. For a time, BRS could not operate in the Town because only Republic was authorized to do so.

The Greater Fort Worth Builders Association sent the Town a letter questioning the Town's legal authority to make Republic the exclusive provider of construction trash-hauling services. BRS and the Town's staff attempted to agree to the terms of a proposed ordinance that would implement a licensing scheme under which BRS could operate. No agreement was reached.

The Town then enacted Ordinance 851, which governs solid waste disposal services in the Town. Some of Ordinance 851's provisions recodified existing regulations applicable to Republic and its customers. The Ordinance also included a new Article III, which applied to construction trash haulers like BRS. Article III required such

2

companies to obtain a license to operate in the Town. It required licensees, among other things, to identify their vehicles and containers, maintain their vehicles and containers in good repair, maintain insurance and other paperwork, and submit certain reports to the Town. Licensees were also required to pay a monthly license fee of 15% of their gross revenue generated within the Town. After the Ordinance was adopted, BRS began operating in the Town, but it did not obtain a license or pay the fee. The Town cited BRS for operating without a license in violation of Ordinance 851. BRS responded by filing this suit.

BRS alleged that the Town, as a general-law municipality, lacks statutory authority to require BRS to obtain a license to haul construction waste and lacks statutory authority to impose a licensing fee based on a percentage of BRS's revenue. BRS further contended that the fee is an unconstitutional occupation tax prohibited by article VIII, section 1 of the Texas Constitution.[1] BRS also alleged that Ordinance 851 is preempted by section 361.0961 of the Health and Safety Code, which prohibits local ordinances that (1) "prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law"; or (2) "assess a fee or deposit on the sale or use of a container or package." TEX. HEALTH & SAFETY CODE § 361.0961(a)(1), (3).[2]

---

[1] *See Lowenberg v. City of Dallas*, 261 S.W.3d 54 (Tex. 2008) (explaining that fees charged by municipalities can amount to unconstitutional occupation taxes).

[2] *See City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586 (Tex. 2018) (analyzing the preemptive effect of section 361.0961).

The district court denied BRS's request for a temporary injunction. The parties then agreed that BRS would place the unpaid fees in escrow pending resolution of the case. After a bench trial, the district court stated its view that the 15% fee was invalid under section 361.0961.[3]

At a later hearing, the Town informed the court that it had amended the Ordinance to decrease the license fee from 15% to 3% of gross revenue. The amended Ordinance was labelled Ordinance 901. The amended Ordinance states that "the primary purpose of the fees authorized and adopted by this ordinance is for regulation" and "the primary purpose of this ordinance is not to raise revenue." It later states that the 3% fee "is imposed with the objective of recovering the administrative costs of regulation, enforcement, monitoring, and the associated impact to infrastructure resulting from solid waste transport services."

The district court rendered a declaratory judgment, which rejects most of BRS's arguments but declares that the 15% license fee "is invalid and unlawful" under section 361.0961(a)(3) of the Health and Safety Code. The court awarded attorney's fees of $8,523 to BRS. Both sides appealed. The court of appeals affirmed in part and reversed in part. 640 S.W.3d 543 (Tex. App.—Fort Worth 2021). It affirmed the portions of the judgment favoring the Town. *Id.* at 573. As to the district court's decision regarding the invalidity of the 15% license fee, the court of

---

[3] From the bench, the court stated that it was "only going to make one finding at this time, and that is that the 15% license fee for the . . . collection of temporary solid waste from construction sites is unlawful and invalid under Section 361.0961 of the Texas Health and Safety Code."

4

appeals held that BRS's challenge to the fee was moot because the Town had replaced the 15% fee with a new 3% fee.  *Id.* at 573–74.

## II.

## A.

Municipalities "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them."  *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (quoting *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946)).  "Texas law recognizes three types of municipalities: home-rule municipalities, general-law municipalities, and special-law municipalities."  *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 530 (Tex. 2016).  "Home-rule municipalities derive their powers from the Texas Constitution and possess the full power of self-government and look to the Legislature not for grants of power, but only for limitations on their power."  *Id.* at 531 (internal quotation marks omitted).

General-law cities, like the Town of Westlake, possess only "those powers and privileges that the State expressly confers upon them."  *Id.* (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004)).  In addition to their expressly granted powers, general-law cities have "only such implied powers as are reasonably necessary to make effective the powers expressly granted."  *Id.* at 536 (quoting *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 947 (Tex. 1940)).  The reasonable necessity of an implied power will not be lightly assumed.  To the contrary, we have held that a general-law city's implied powers are limited to those that are "indispensable" to

5

carrying out expressly granted powers. *Mann*, 142 S.W.2d at 947. Stated another way, "[a] municipal power will be implied only when without its exercise the expressed duty or authority would be rendered nugatory." *Foster v. City of Waco*, 255 S.W. 1104, 1106 (Tex. 1923). Any reasonable doubt about an implied power's existence is resolved against it. *Bizios*, 493 S.W.3d at 536.

We begin with BRS's argument that the Town lacked statutory authority to require BRS to pay a percentage-of-revenue fee in exchange for a license to conduct business in the Town. Before reaching the merits of that issue, however, we must address the Town's contention that BRS's challenge to the fee became moot when the Town decreased the fee from 15% to 3% of gross revenue. If the claim has been mooted by intervening events, we have no power to resolve it. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (observing that when a case becomes moot, the court loses jurisdiction over it).

"A case is moot when either no 'live' controversy exists between the parties, or the parties have no legally cognizable interest in the outcome." *City of Krum v. Rice*, 543 S.W.3d 747, 749 (Tex. 2017). The Town argues that BRS's claims regarding the 15% fee became moot when the Town lowered the rate to 3%. The court of appeals concluded that the Town's repeal of the 15% fee "moots BRS's challenge to the fee's validity as BRS's challenge is predicated on the amount of the fee." 640 S.W.3d at 548. BRS, however, contends that, regardless of the rate, the Town lacks authority to impose a percentage-of-revenue licensing fee. BRS has pursued this argument in the district court, in the court of appeals, and in this Court. Although some of BRS's objections to the fee

6

regard the fee's amount, BRS has consistently maintained that any percentage-of-revenue fee is unlawful regardless of the amount. A claim that a percentage-of-revenue fee of *any size* is unlawful is not mooted by an intervening adjustment to the *size* of the fee. The parties' dispute in this regard is just as "live" under the 3% fee as it was under the 15% fee.

In addition, BRS at times paid the 15% fee into escrow under an agreement with the Town. As far as we are aware, those fees remain in escrow, and BRS can only recover them if it succeeds in demonstrating that the Town lacked authority to impose them. Thus, because of the parties' escrow agreement, BRS continues to have a legally cognizable interest in the legality of the 15% fee even though it has been replaced with a lower fee. For both of these reasons, BRS's claim that the Town lacks authority to impose a percentage-of-revenue fee is not moot.

Turning to the merits of that claim, an initial distinction should be drawn between the licensing fee imposed on BRS and the franchise fee imposed on Republic. Republic is the Town's conventional residential and commercial trash-hauling franchisee. The Town's relationship with Republic is governed by an exclusive franchise agreement as described in section 364.034 of the Health and Safety Code. Republic is not a party to this case, and nothing in our decision should be construed to comment on the rights of the Town, of Republic, or of similarly situated parties operating under section 364.034 or under franchise agreements. Instead, we address the Town's authority under section 363.111 of the Health and Safety Code, the primary statutory provision on which the Town relies for its authority to charge licensing fees to companies like BRS.

Section 363.111 authorizes municipalities, including general-law municipalities, to "adopt rules for regulating solid waste collection, handling, transportation, storage, processing, and disposal." TEX. HEALTH & SAFETY CODE § 363.111(a). To begin with, this statutory grant of authority does not expressly authorize any fee at all. Section 363.111 might *impliedly* authorize a regulatory fee, but this would be the case only if the implied power to charge a fee is "indispensable," *Mann*, 142 S.W.2d at 947, to the express power to "adopt rules for regulating solid waste collection." The Town contends that its statutory authority to regulate must include both the power to require regulated companies to obtain a license and the power to charge a regulatory fee to recover the cost to the Town of administering the regulations.

We can assume, without deciding, that the Town is empowered to require construction trash haulers like BRS to obtain a permit or license as a reasonably necessary component of the Town's express power to regulate solid waste collection. There is authority for this proposition.[4] But we need not comment further on it, because even if the Town may impose a licensing requirement, the dispositive issue before us is

---

[4] *See Ex parte Wade*, 146 S.W. 179, 182 (Tex. Crim. App. 1912) ("It is generally received doctrine that the power granted to a municipality to regulate or to prohibit includes the power to license as a means to those ends."); *Flores v. State*, 33 S.W.3d 907, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("Regulation of conduct may include the requirement that [the regulated person] hold a permit issued by the municipality."); *Ex parte Mata*, 925 S.W.2d 292, 294 (Tex. App.—Corpus Christi–Edinburg 1996, no pet.) ("Historically governments have granted licenses, charters and permits of various types as aids in regulating the activities of its citizens and others who conduct endeavors within the jurisdiction. . . . The license or permit is a means of the government to assure that certain criteria are met by the one who wishes to conduct those activities.").

whether the Town has authority to charge the kind of licensing *fees* it has charged.  For the following reasons, we conclude that it does not.

We must begin with another assumption—that the express power to regulate includes an implied power to charge regulatory fees.  Even if that is the case, such fees would have to be tethered to the Town's costs of administering the regulation.  Only if a fee is calibrated to cover regulatory costs can there be any argument that the power to charge the fee is "indispensable" to the power to regulate.  *Mann*, 142 S.W.2d at 947.

The Town contends that its percentage-of-revenue fee—in both its 15% and its 3% iteration—covers only the cost to the Town of regulating construction trash haulers like BRS.  But regardless of how much money a percentage-of-revenue fee is generating at any given point in time, such a fee is tethered only to the market price of trash-hauling services, not to the Town's cost of regulating.  The Town does not regulate the *price* of trash hauling.[5]  How much BRS charges its customers to haul their trash is none of the Town's concern, and this privately negotiated, fluctuating amount has nothing to do with how much money the Town needs to administer its trash-hauling regulations.  A more conventional, volume-based fee under which the Town charged fixed amounts per license application or per construction site, for instance, could be calibrated to offset staffing or paperwork expenses incurred by the Town because of the regulation.[6]  But a floating, percentage-of-revenue fee will

---

[5] We express no view on whether it could lawfully do so.

[6] In *Lowenberg*, we distinguished between a city's "administrative costs of collecting fire safety information on commercial buildings and incorporating

9

fluctuate based on economic forces having nothing to do with the Town's internal costs.

Moreover, a percentage-of-revenue fee resembles—at least in its mode of calculation—a traditional business tax assessed based on revenues. We see no way in which the power to charge such a "fee" is indispensable to the power to regulate. From the perspective of the fee-payer, a revenue-based licensing fee is difficult to distinguish from an unconstitutional occupation tax.[7] Because it fluctuates based on

it in a database," which were valid, internal regulatory costs recoverable through a regulatory fee, and the "costs of fire prevention in commercial buildings," which were costs of providing a public service, not the costs of administering a regulation. 261 S.W.3d at 58. At trial, the Town's manager testified that the fee was designed to cover "administrative and oversight" costs as well as "damage to any public or other private properties" and "damage to Town streets" and "Town infrastructure." The Town also took the position that the fee could be used to cover general capital improvement costs for the Town's streets. Our decision in *Lowenberg*, however, draws a line between (1) internal "administrative costs" the City expends *implementing the regulation itself*; and (2) external costs caused by or related to the regulated activity. *Id.* We need not address the parties' evidentiary dispute about the amount of the fee, however, because we conclude that the implied power to charge percentage-of-revenue licensing fees is not indispensable to the express power to regulate trash hauling.

[7] Our precedent on article VIII, section 1 of the Texas Constitution distinguishes between valid regulatory fees and unconstitutional occupation taxes based on whether, from the perspective of the government, "the primary purpose of the fees . . . is the raising of revenue." *Hurt v. Cooper*, 110 S.W.2d 896, 899 (Tex. 1937). Because we need not address whether the percentage-of-revenue fees charged to BRS are unconstitutional occupation taxes, we need not assess the fee's legality by focusing on the purpose for which the Town imposed it. Viewing the matter from BRS's perspective, the ease with which companies like BRS could mistake these fees for unconstitutional taxes gives us additional reason to doubt that the power to charge revenue-based fees of this nature can be necessarily implied from the generic power to regulate trash hauling.

market forces having nothing to do with the Town's regulatory expenses, and because it resembles a business tax in its calculation method, a percentage-of-revenue fee is different in kind from cost-recovery fees a general-law city might validly charge incident to its power to regulate trash hauling. We find it unlikely that the Legislature's grant to general-law cities of the generic authority to regulate trash hauling carries with it an implied power to impose a revenue-based charge of this nature. And even if that question is not free from doubt, any doubt about the existence of a general-law city's implied power must be resolved against the city. *Bizios*, 493 S.W.3d at 536. We hold that the Town's express power under section 363.111 to regulate trash hauling does not include an implied power to charge percentage-of-revenue licensing fees.[8]

The Town also argues that the fee was authorized by section 363.113 of the Health and Safety Code, which provides that "each municipality shall review the provision of solid waste management services in its jurisdiction and shall assure that those services are

---

[8] We have previously held that regulatory fees, "when only in an amount reasonably necessary to fund the State's regulation of that industry, are not [unconstitutional] occupation taxes." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 (Tex. 1997). BRS argues that the Town's fees are unconstitutional occupation taxes because they generate more revenue than is reasonably necessary to fund the Town's regulation. Because we conclude that the Town lacks statutory authority to impose the kind of fees it has imposed, we need not consider whether the constitution also prohibits the fees or whether the amount the fees generated at the time of trial was correctly calibrated to cover the City's costs. Our resolution of the statutory question thus has the added benefit of avoiding the constitutional question, which we should always do where possible. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003).

provided to all persons in its jurisdiction by a public agency or private person." We see no basis in this provision for an implied power to charge a percentage-of-revenue licensing fee. The Town's case is strongest under section 363.111, and for the reasons already explained, we do not understand that provision to carry with it the implied authority the Town seeks. Any grant of such authority flowing from section 363.113 would be even more oblique. Resolving doubts against a general-law city's implied authority, section 363.113 does not authorize the Town to charge revenue-based licensing fees to trash haulers like BRS.

**B.**

Having held the licensing fee invalid because it exceeds the Town's statutory authority, we must assess what remains of the Town's regulatory scheme in the absence of the fee. As described above, Article III of the Ordinance included the licensing requirement, the percentage-of-revenue licensing fee, and various regulations governing trash haulers' activities. BRS challenges all three elements of Article III, and we hold that the percentage-of-revenue licensing fee exceeds the Town's authority.

Although much of the parties' briefing and all of the *amicus* involvement focuses on the percentage-of-revenue fee, the parties do not address whether the rest of the Ordinance is severable from the fee. In general, the invalid portion of an ordinance or statute should be severed from the rest of the enactment, which remains in effect without the severed portion, "unless all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be

12

presumed the legislature would have passed the one without the other." *Rose v. Drs. Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990) (quoting *W. Union Tel. Co. v. State*, 62 Tex. 630, 634 (1884)).

Here, the percentage-of-revenue fee was, by all accounts, an integral part of the Town's attempt to regulate construction trash hauling. From the beginning, the fee was a key issue in discussions between BRS and the Town about enactment of the Ordinance. The Town makes no argument that the other provisions of Article III should remain operative if the fee is declared invalid. Indeed, the Town's primary defense of the fee is that its power to charge a fee is *indispensable* to its ability to regulate trash hauling at all. Every indication in the record is that the fee and the regulatory scheme were negotiated and enacted as a package deal. It therefore appears unlikely that the Town—contrary to its protestations of the fee's indispensability—would have enacted the other provisions of Article III in the absence of the fee. In particular, the prospect that the licensing requirement remains viable in the absence of its accompanying fee seems remote. Nevertheless, the Ordinance contains a severability clause, and "[w]hen an ordinance contains an express severability clause, the severability clause prevails when interpreting the ordinance." *City of Houston v. Bates*, 406 S.W.3d 539, 549 (Tex. 2013).

If the remainder of the Ordinance is severable from the invalid fee, we would need to address whether the Town's authority to "adopt rules for regulating" trash hauling includes the power to require trash haulers to obtain a license. We would also need to address whether the Ordinance, in whole or in part, is preempted by section 361.0961.

13

For several reasons, we decline to reach these remaining issues. First, neither party has addressed the severability question at all. Second, the parties' positions on other questions cast doubt on the extent to which their dispute over the Ordinance's other provisions survives the fee's invalidity. For example, the Town emphasizes the fee's importance to its efforts to regulate trash hauling and gives no indication that it wishes to preserve the rest of the Ordinance if the fee cannot stand. BRS, for its part, suggests that if the fee and license requirements are removed, it would not object if some other regulations remain in place.[9] Third, resolving the remaining issues would require us to definitively answer substantial questions of law that may not be essential to this case's resolution. *See State v. One (1) 2004 Lincoln Navigator, VIN # 5LMFU27RX4LJ28242*, 494 S.W.3d 690, 701 (Tex. 2016) ("[J]udicial restraint counsels against deciding unnecessary issues."). We will remand the case to the court of appeals, where the parties may address the severability question in the first instance, in light of our decision today.[10]

---

[9] BRS states that it "does not dispute that the Town can regulate various aspects of BRS' business operations if they are applied equally and fairly to all building construction trades across the board." Further, "BRS is not opposed to the City regulating BRS like it does other building contractors and requiring compliance with generally applicable public, health and safety regulations." Similarly, at oral argument, BRS maintained that while it was challenging "licensure and a percentage of revenue fee," it was not taking the position that, if it prevails, "there's going to be no regulation of trash collection or disposal" by BRS.

[10] BRS asks that we remand the case to the district court to reassess attorney's fees. "Where the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial

### III.

The Town of Westlake lacks authority as a general-law municipality to impose a percentage-of-revenue licensing fee on construction trash-hauling companies like BRS. The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals for further proceedings consistent with this opinion.

James D. Blacklock
Justice

**OPINION DELIVERED:** May 20, 2022

---

court for reconsideration of what is equitable and just." *Morath v. Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 885 (Tex. 2016). After the court of appeals resolves any issues the parties present for further review on remand, it may consider whether BRS's success on appeal warrants remand for reassessment of attorney's fees.